**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JULIE BAROODY, and
WILLIAM B. FARMER,

    PLAINTIFFS,

v.

CITY OF QUINCY, FLORIDA,
KEITH A. DOWDELL, in his official
capacity as Commissioner and Mayor
of the City of Quincy, RONTE R.
HARRIS, in his official capacity as
Commissioner and Mayor Pro-Tem of
the City of Quincy, and ANGELA G.
SAPP, in her official capacity as
Commissioner of the City of Quincy,

    DEFENDANTS.

Case No. 4:20-cv-217

**CITY'S MOTION TO DISMISS AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

    The Plaintiffs' First Amended Complaint is long on rhetoric and short on facts. The facts actually alleged are not enough to state a claim for relief under the Voting Rights Act (Count 1), the Equal Protection Clause (Counts 2 and 4), or the *Anderson/Burdick* test rooted in the First and Fourteenth Amendments of the U.S. Constitution (Count 3). Thus, there is no basis for declaratory or injunctive relief (alleged separately as Counts 5 and 6). The Plaintiffs' co-mingling of allegations

1

and decision to needlessly list individual commissioners as Defendants provide additional grounds for dismissal.

## STANDARDS FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) mandates that plaintiffs provide in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."  Indeed, "[e]ach allegation must be simple, concise, and direct."  *Id.* at 8(d)(1).  Rule 10(b) further provides that each claim founded on a separate transaction or occurrence be stated in a separate count.  Dismissal for failure to comply with Rules 8 and 10 is appropriate under this Court's "inherent authority to control its docket and ensure prompt resolution of lawsuits."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Rule 12(b)(1) requires dismissal where the complaint does not establish "a basis of subject matter jurisdiction."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  Subject matter jurisdiction presents threshold questions best resolved prior to the merits.  *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015).

Rule 12(b)(6) requires dismissal where well-pleaded facts and reasonable inferences from those well-pleaded facts fail to establish grounds for relief.  *See McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004).  In assessing these questions, "[i]t is not . . . proper to assume that [the plaintiff] can prove facts that

[he or she] has not alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (second alteration in original) (internal quotation marks and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And although courts must assume the veracity of well-pleaded factual allegations, accepting legal conclusions "couched as [] factual allegation[s]" is not appropriate. *Id*. at 678-79.

While the complaint remains the focus at the motion to dismiss stage, courts may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). Attachments to the complaint must also be considered. "'Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.'" *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) (quoting *Tucker v. Nat'l Linen Serv. Corp.*, 200 F.2d 858, 864 (5th Cir. 1953)); *see also Israel v. DeSantis*, 2020 U.S. Dist. LEXIS 78750, *7-8 (N.D. Fla. May 5, 2020) (collecting cases and providing further explication of rule).

The City of Quincy, together with the other individual Defendants,[1] seeks dismissal of the Plaintiffs' First Amended Complaint. Dismissal is required here.

---

[1] This filing refers to the Defendants collectively as "City."

# ARGUMENT

The Plaintiffs allege only a vote dilution theory of harm. Both named Plaintiffs allege that they are "unable to elect [their] preferred [White] candidates" for City Commission. *E.g.*, ECF 18 at ¶¶ 7-8. This is because the City's most recent redistricting efforts are alleged to have diluted the voting strength of White residents relative to the voting strength of Black residents. *Id.* at ¶¶ 1, 3-5, 7-8, 22-26, 34-40. But the Plaintiffs fail to state a claim under the vote dilution theory for purposes of Section 2 of the Voting Rights Act or the Equal Protection Clause. Vote dilution cannot serve as the basis for a claim under the *Anderson/Burdick* test rooted in the First and Fourteenth Amendments. The separate counts for declaratory and injunctive relief offer no reprieve either because the Plaintiffs can show no entitlement to relief under their substantive claims. The Plaintiffs' pleading should also be dismissed for being a shotgun pleading that fails to comply with Rules 8 and 10. The needless listing of *some* individual City Commissioners for actions taken by a collegial body provides a further basis to dismiss.

## I.   *The Plaintiffs fail to state a claim under the Voting Rights Act.*

Section 2 of the Voting Rights Act prohibits states and their political subdivisions, like the City of Quincy, from imposing or applying a voting structure or practice "in a manner which results in a denial or abridgment of the right . . . to vote on account of race or color." 52 U.S.C. § 10301(a). Section 2 further

provides a cause of action for protected groups that establish "that [their] members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b). The U.S. Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986) creates a filtering mechanism for claims under Section 2 of the Voting Rights Act. *Gingles* holds that "unless minority voters possess the *potential* to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." *Id.* at 51 n. 17. *Gingles* thus imposes three preconditions: (1) that the minority group challenging the existing scheme is "sufficiently large and geographically compact," (2) that the minority group is "politically cohesive," and (3) that the "majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Id.* at 50-51.

The Plaintiffs First Amended Complaint, together with its attachments, fails to satisfy the first of the preconditions under *Gingles*—that Whites form a group "large enough to *control* a district, not just influence it." *Dillon v. Baldwin Cnty. Comm'nrs*, 376 F.3d 1260, 1268 (11th Cir. 2004) (citations omitted). The Plaintiffs attach and rely exclusively in their First Amended Complaint on the May 15, 2020 Declaration of Dr. Jowei Chen for the proposition that Whites are "sufficiently large and geographically compact [as a minority group] to constitute a majority in two single-member districts (namely, districts 4 and 5) . . . in

5

conjunction with a coalition of Hispanics." ECF 18. at ¶ 35.  Not so.  Neither of the two demonstration plans that Dr. Chen provides with his declaration establishes White control of two City Commission Districts.

Demonstration Plan 1 shows Whites with high concentrations of only 41.3% and 37.3% in Districts 4 and 5 respectively.  ECF 18-4 at 4.  Under Demonstration Plan 1, even if one assumes that all White residents will vote for the same candidate and all Black residents will vote for another candidate, Whites still would not *control* any City Commission District, much less two.

Demonstration Plan 2 cannot establish White control of two districts either.  It shows Whites with high concentrations of 51.2% and 50.2% in Districts 4 and 5 respectively.  ECF 18-4 at 6.  But, according to Dr. Chen's Declaration, only 68.87% to 76.72% of Whites actually support the White-preferred candidate, while less than 4% of Blacks do, and only about half of Hispanics do.  ECF 18-4 at 10, Tbl. 1.  This means that even the nominal majorities of 51.2% and 50.2% in Districts 4 and 5 fall short of establishing White *control* of two districts.

Nor can Demonstration Plans 1 and 2 be saved by some undefined "coalition of Hispanics." ECF 18 at ¶ 35.  The First Amended Complaint includes no factual allegations showing that Whites and Hispanics vote as a coalition.  At best, the First Amended Complaint includes a footnote with a vague reference to paragraph 16 and Table 1 of Dr. Chen's May 15, 2020 Declaration to support the coalition

theory. ECF 18 at ¶ 35 n.4. Dr. Chen's declaration, however, shows only that Hispanics roughly split their vote between Republican and Democratic candidates in three statewide races during the 2018 General Election; Blacks overwhelming favored Democrats; and Whites strongly favored Republicans. *See* ECF 18-4 at ¶ 16 and Tbl. 1. That is it. Hispanics splitting their vote between major party candidates in three partisan, statewide races during a single election is the slender reed upon which the Plaintiffs ask this Court to *infer* a coalition between Hispanics and Whites for non-partisan city elections. No such inference is appropriate. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 563, 570 n. 8.

In sum, Plaintiffs do not allege facts concerning White *control* of two City Commission Districts under Demonstration Plans 1 or 2. This is fatal to the Plaintiffs' Voting Rights Act claim. *See Dillon*, 376 F.3d at 1268.

The Plaintiffs' decision to plead their case in a way that relies on Dr. Chen's May 15, 2020 Declaration has important legal consequences that require dismissal. The City remains mindful of Dr. Chen's subsequent declarations seemingly abandoning Demonstration Plan 2, attempting to resurrect Demonstration Plan 1, and providing Demonstration Plans 3, 4, and 5. ECF 22-3, ECF 26, ECF 28, and Plaintiffs' Exh. 4 to PI Hearing. But these subsequent declarations do not matter for purposes of judging whether the First Amended Complaint is itself sufficient to state a claim. As this Court recently explained when granting a motion to dismiss:

7

> Plaintiff's choice to plead his case in this way [through attachments] has an important legal consequence. 'Where there is conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.' *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) (quoting *Tucker v. Nat'l Linen Serv. Corp.*, 200 F.2d 858, 864 (5th Cir. 1953)). 'The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself.' *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). In other words, by choosing to include the entire record of the suspension and removal proceedings as attachments to the complaint, Plaintiff forces this Court into the unusual posture of having to accept his allegations as true, and to draw all reasonable inferences in his favor, except to the extent the attachments he has provided contradict his pleadings or foreclose those inferences. If all that were before this Court were ECF No. 1, and nothing else, this Court's analysis of the pending motions might look different. But, because Plaintiff chose to provide this Court with such a voluminous body of attachments, and because those attachments are part of the complaint for purposes of the instant motions, Plaintiff has forced upon this Court the obligation to defer to the contents of those attachments where they conflict with his complaint.

*Israel*, 2020 U.S. Dist. LEXIS 78750, at *7-8. Just like *Israel*, the Plaintiffs decision to attach Dr. Chen's May 15, 2020 Declaration "has forced upon this Court the obligation to defer to the contents [of that declaration]." *Id.* at *8.

Thus, this Court should dismiss Count 1 of the First Amended Complaint.

## II.     *The Plaintiffs fail to state a claim under the Equal Protection Clause.*

Claims under the Fourteenth Amendment's Equal Protection Clause require a showing of "*both* the purpose and effect of invidious discrimination." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (emphasis in original). Where, as here, vote dilution caused by racial gerrymandering is concerned, one must allege

8

that race was the "predominant motive" in the design of a district.  *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800 (2017); *accord Miller v. Johnson*, 515 U.S. 900, 916 (1995).  Simply alleging that map drawers were "aware of racial demographics" is not enough, *Miller*, 515 U.S. at 916; alleging that race was one motivation is not enough, *Easley v. Cromartie*, 532 U.S. 234, 241 (2001); and (over)using phrases like "race-based" or "based upon race" simply provide classic examples of conclusory allegations that fail to save a complaint from dismissal.  *See Higginson v. Becerra*, 363 F. Supp. 3d 1118, 1126-28 (S.D. Cal.), *aff'd*, 786 F. App'x 705 (9th Cir. 2019) (dismissing a racial-gerrymandering claim because the plaintiff did not allege facts to support the conclusion that racial motivation predominated in redistricting, and thus failed to overcome the presumption that the legislature created the districts in good faith).

The Plaintiffs' First Amended Complaint fails to allege that race was the predominant factor in drawing the City Commission Districts at issue here. Stripped of conclusory statements, and like their Voting Rights Act claim, the Plaintiffs seemingly rely on the May 15, 2020 Declaration of Dr. Jowei Chen for the proposition that race was the predominate motive in the City's enacted redistricting plan.  ECF 18 at ¶ 40-41.  Otherwise, the Plaintiffs merely allege that stray statements from members of a collegial body and the rush to redistrict show some intent to discriminate based on race.  ECF 18 at ¶¶ 29-30, 32, 43, 45.

Yet, at best, Dr. Chen's Declaration stands for the limited proposition that racial considerations predominated over a single redistricting criterion (geographic compactness), *not* that race predominated over all other considerations or districting criteria (like equal apportionment for one-person-one-vote purposes). ECF 18-4 at 14-22 (alleging it was "statistically unlikely," though not impossible or improbable, that the City's enacted plan was race-blind but, as to predominate motive in enacting the plan, stating only that "racial considerations . . . predominated over the traditional districting criterion of geographic compactness," and not providing any basis to allege that race predominated over all considerations or districting criteria).

Even Dr. Chen's limited proposition offers no actual facts. Dr. Chen's discussion regarding the "focus" of the City's map-drawer concerns the map-drawer's motives—his state of mind. It is axiomatic that experts may not testify about an individual's state of mind or his or her intent.[2] ECF 18-4 at 29. Dr. Chen's discussion concerning the map-drawer therefore offers no factual

---

[2] *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 78 (D.D.C. 2007); *Holcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 30 (D.D.C. 2007); *see also AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (holding that experts may not provide testimony about " intent, motive, or state of mind, or evidence by which such state of mind may be inferred." ). Such testimony has "no basis in any relevant body of knowledge or expertise" and concerns "lay matters which a [fact finder] is capable of understanding and deciding without the expert' s help." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (citations omitted).

allegations concerning intent. Even Dr. Chen acknowledges that the discussion simply "reinforces" his own findings for purposes of the Voting Rights Act claim—that racial considerations predominated over geographic compactness. *Id.*

Other attachments to the Plaintiffs' First Amended Complaint further undercut allegations in the complaint itself. The attachments show that the City hired a consultant who advised that the then-existing 1970s era map was severely malapportioned; the City moved quickly to undo this violation of the "one person, one vote" principle; and did so in a way that complies with traditional redistricting factors. Specifically, the attachments included by the Plaintiffs, which control over the Plaintiffs' other allegations, provide the following:

- That the City's redistricting effort was initiated and driven by the need to address the malapportionment between districts that had developed since the City was last redistricted 45 years ago. ECF 18-3 at 129 ("In 1971 is when we started this and we haven't had any redistricting since then? That's a problem. That's probably why it's going the way it is. But, anyway, let's take care of business, Commissioners."); ECF 18-6 at 3 (pg. 9, lns. 13-18) ("The city has not been redistricted in 45 years, and – the districts need to be fairly close in terms of population to each – each other. Your current districts are not that."); ECF 18-6 at 11 (pg 40, lns. 8-17) ("The whole purpose of redistricting is simply to make sure that populations are roughly equally represented. And there are challenges to that. Mr. Spitzer – excuse me – shared the criteria that we have to look at. I've heard people say we're rushing this and – and on one side, I see why you say that we're rushing it. It may feel that way, but we've been talking about this now for months and months and months.")

11

- And that the City considered a host of criteria in development of its enacted redistricting plan:

    > MR. McLEAN: Okay. So, currently, of the maps that meet criteria – would you identify those maps that meet criteria, from your standpoint?
    >
    > MR. SPITZER: Well, it's – it's al- – it's Alternative 1, 2, 3, or 4 –
    >
    > MR. McLEAN: Okay.
    >
    > MR. SPITZER: – which you've seen – the commission has seen many times, and those are – they all meet cur- – criteria.
    >
    > MR. McLEAN: Thank you.
    >
    > COMMISSIONER SAPP: Mr. Spitzer, would you elaborate on those criteria a little bit for us?
    >
    > MR. SPITZER: Sure. We've – they've – the districts should be as nearly equal in population as is possible or practicable. That means that you try to get each district as close to a – a zero- percentage-point deviation from the average size.
    >
    > So, if it's, you know, two or three percentage points, that's great, over or under, but the – in terms of population, the red flag is – is that, if you have a deviation of 10 percentage points or more between the largest and smallest districts, that is an indication that the – the districts are not as nearly equal in population as is practicable. That's the first criteria.
    >
    > The second criteria is that you need to draw districts that do not dilute minority voting strength and to preserve communities of – of interest that vote in a similar fashion.
    >
    > And then, beyond that, there's a – there's a host of several other criteria which we try to follow. We – we use census blocks because that data is presumed to be correct and they are easily access- – accessible. They integrate with a common redistricting software.

> We try to follow significant man-made or natural boundaries so that the district boundaries are easy to understand for voters. And all of these maps do that.
>
> You try to not split, in this case, city neighborhoods into two different districts, but – but those sorts of things. All of those are considered in total, but the primary two criteria are equal population, don't dilute mi- – minority voting strength.

ECF 18-6 at 9 (pg 32, ln. 8-pg. 33, ln. 15).

Simply put, the Plaintiffs do not allege sufficient facts to disentangle race from other race-neutral redistricting principles such as the "one person, one vote" mandate—they do not sufficiently allege that race was the "dominant and controlling rationale" for the plan at issue. *Shaw v. Hunt*, 517 U.S. 899, 905 (1996) (quoting *Miller*, 515 U.S. at 913). As such, the Plaintiffs cannot overcome the presumption of good faith that attaches to the City's redistricting efforts—a "most difficult task" that involves a "complex interplay of forces" and "discretion to exercise the political judgment necessary to balance competing interests." *Shaw*, 517 U.S. at 915-16; *see also Miller*, 515 U.S. at 915; *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

Thus, this Court should dismiss Counts 2 and 4 of the First Amended Complaint.

### III. The Plaintiffs lack standing to state an Anderson/Burdick claim.

Count 3 of the Plaintiffs' First Amended Complaint purports to state a claim for burdening the right to vote under the *Anderson/Burdick* test. ECF 18 at ¶¶ 69-78. *Anderson/Burdick* is a balancing test rooted in the First and Fourteenth Amendment where the courts balance burdens imposed on the right to vote because of state regulation against the state interests in imposing those burdens. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The problem here is that there is nothing on the Plaintiffs' side of the balance; the *Anderson/Burdick* test does not apply and the Plaintiffs cannot allege an Article III injury if vote dilution is the alleged harm.

More specifically, the *Anderson/Burdick* test applies only when "evaluat[ing] a law respecting the *right to vote*—whether [the challenged law] governs voter qualifications, candidate selection, or the voting process." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (Scalia, J., concurring) (emphasis added). Undue burdens on the *right to vote* or outright *vote denial* are distinct from *vote dilution*. Vote dilution does not keep someone from voting or burden one's right to vote. Vote dilution instead diminishes the effect of a validly cast vote. *See Johnson v. De Grandy*, 512 U.S. 997, 1007 (1994) (defining vote dilution under the Voting Rights Act as the "manipulation of district lines [to] dilute the voting strength of politically cohesive minority group members, whether

by fragmenting the minority among several districts . . . or by packing them into one or a small number of districts"); *Jacobson v. Fla. Sec. of State*, 957 F.3d 1193, 2020 U.S. App. LEXIS 13714, at *55 (Pryor, William, J., concurring) (11th Cir. Apr. 29, 2020) (explaining why the *Anderson/Burdick* test is a poor fit for vote dilution claims while writing for majority in finding no standing for such claims).

Again, the two named Plaintiffs only allege a vote dilution theory of harm. They say that they are "unable to elect [their] preferred [White] candidates" for City Commission.  *E.g.*, ECF 18 at ¶¶ 7-8.  There is no *Anderson/Burdick* claim.

Thus, this Court should dismiss Count 3 of the First Amended Complaint.

## IV.   *The Plaintiffs cannot state an independent claim for declaratory or injunctive relief.*

Counts 4 and 5 of the Plaintiffs' First Amended Complaint are titled "Declaratory Relief" and "Injunctive Relief" respectively.  ECF 18 at 42-43. These counts are derivative of Counts 1-4; the Plaintiffs are not entitled to any relief if they fail to state a claim under Counts 1-4, which they have failed to do so.

Separately, the City notes that, if properly pled, the count for declaratory relief is still duplicative of other counts in the First Amended Complaint.  "Claims are duplicative when they stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available."  *BBX Capital Corp. v. FDIC*, 2018 U.S. Dist. LEXIS 222769, at *39 (S.D. Fla. 2018) (quoting

15

*WMI Liquidating Trust v. FDIC*, 110 F. Supp. 3d 44, 59 (D.D.C. 2015)). Duplicative claims may be dismissed. *Id.*

The City further notes that "[i]njunctive relief is a remedy, not a cause of action." *SHM Int'l Corp. v. Guandong Chant Grp., Inc.*, 2016 U.S. Dist. 189377 *21 (N.D. Ga. 2016). The Plaintiffs' separate count for injunctive relief is both unnecessary and improper.

Thus, this Court should dismiss Counts 5 and 6 of the Plaintiffs' First Amended Complaint.

## V. *The Plaintiffs' shotgun pleading should be dismissed.*

Taken as a whole, the Plaintiffs' First Amended Complaint fails to comply with Federal Rules of Civil Procedure 8(a)(2) and 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland*, 792 F.3d at 1320. According to the Eleventh Circuit, "[t]he most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321-22. "The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venal sin of being replete with

conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* "[A] district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (citations omitted).

The Plaintiffs' First Amended Complaint commits both the mortal and venal sins. Each of the counts "re-allege and incorporate by reference" all preceding paragraphs. ECF 18 at ¶¶ 46, 55, 68, 79, 91, 95. While some of the relief sought is alleged as separate counts, *id.* at ¶¶ 91-94, 95-105, the actual prayer for relief makes no effort to distinguish relief that might be appropriate for one count from the relief that might be appropriate under another count. *Id.* at 45-46. Vague, immaterial, and conclusory statements are too numerous to mention; aspersions on the City Commission are, of course, not facts. *See, e.g.*, ECF 18 at ¶¶ 10-12. In sum, the First Amended Complaint is the worst kind of shotgun pleading—the kind that misses its mark.

Thus, this Court should dismiss the First Amended Complaint in its entirety.

## VI. *At the very least, the individual commissioners should be dismissed.*

Along with the City, the Plaintiffs have chosen to name Commissioners Harris, Dowdell, and Sapp as Defendants. The individual commissioners took no action at issue here—the collegial body of which they are members did. And the

individual commissioners are not themselves alleged to have violated any laws. So the commissioners are entirely redundant here, as evidenced by their being listed as Defendants only in their official capacities. ECF 18 at ¶¶ 10-12. Because official-capacity suits are in fact an action against the public entity of which the public official is an agent, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), courts routinely dismiss public officials who are sued in their official capacities alongside the entities they serve; this avoids needless redundancy. *See*, *e.g.*, *Higdon v. Tusan*, 746 F. App'x 805, 814-15 (11th Cir. 2018) (affirming the dismissal of a county commissioner sued in his official capacity where the county remained as a defendant); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming the dismissal of municipal officers sued in their official capacities where the municipality remained as a defendant); *Ala. State Conference of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1339 (N.D. Ala. 2019) (dismissing members of a city council sued in their official capacities in a redistricting case where the city remained as a defendant).

    Thus, at the very least, this Court should dismiss the individual Commissioners from this case.

## CONCLUSION

    This Court should dismiss the Plaintiffs' First Amended Complaint for the reasons stated above.

Respectfully submitted by:


*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
 mjazil@hgslaw.com
JOSEPH A. BROWN (FBN 25765)
 jbrown@hgslaw.com
KRISTEN C. DIOT  (FBN 118625)
 KDiot@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551

Dated:  June 5, 2020            ***Counsel for Defendants***

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing complies with the size and font requirements under the Northern District of Florida's Local Rules and, at 4,441 words, complies with the applicable word limits.

*/s/ Mohammad O. Jazil*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via transmission of a Notice of Electronic Filing through the Court's CM/ECF system to the following on this 5th day of June, 2020:

*/s/ Mohammad O. Jazil*
Attorney